**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

VICTORIA M. BLACKSTON,       :

    Plaintiff,              :

vs.                     :     CA 16-0460-MU

NANCY A. BERRYHILL,         :
Acting Commissioner of Social Security,
                            :

    Defendant.

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action, pursuant to 42 U.S.C. § 1383(c)(3), seeking judicial review of a final decision of the Commissioner of Social Security denying her claim for supplemental security income benefits. The parties have consented to the exercise of jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c), for all proceedings in this Court. (Docs. 19 & 21 ("In accordance with the provisions of 28 U.S.C. 636(c) and Fed.R.Civ.P. 73, the parties in this case consent to have a United States Magistrate Judge conduct any and all proceedings in this case, . . . order the entry of a final judgment, and conduct all post-judgment proceedings.")). Upon consideration of the administrative record, plaintiff's brief, the Commissioner's brief, and the arguments of counsel at the April 26, 2017 hearing before the Court, it is determined that the Commissioner's decision denying benefits should be reversed and remanded for further proceedings not inconsistent with this decision.[1]

---

[1]     Any appeal taken from this memorandum opinion and order and judgment shall be made to the Eleventh Circuit Court of Appeals. (*See* Docs. 19 & 21 ("An appeal from a (Continued)

# I. Procedural Background

Plaintiff protectively filed an application for supplemental security income ("SSI") benefits on June 27, 2013, alleging disability beginning on October 1, 2011. (*See* Tr. 142-47.) Her claim was initially denied on December 27, 2013 (Tr. 77 & 92-96) and, following Plaintiff's January 10, 2014 written request for a hearing before an Administrative Law Judge (*see* Tr. 97-99), a hearing was conducted before an ALJ on March 3, 2015 (Tr. 35-75). On April 17, 2015, the ALJ issued a decision finding that the claimant was not disabled and, therefore, not entitled to supplemental security income benefits. (Tr. 18-30.) More specifically, the ALJ proceeded to the fifth step of the five-step sequential evaluation process and determined that Blackston retains the residual functional capacity to perform those sedentary jobs identified by the vocational expert ("VE") during the administrative hearing (*compare id.* at 29-30 *with* Tr. 66-68). On May 11, 2015, the Plaintiff appealed the ALJ's unfavorable decision to the Appeals Council (Tr. 15); the Appeals Council denied Blackston's request for review on July 27, 2016 (Tr. 1-3). Thus, the hearing decision became the final decision of the Commissioner of Social Security.

Plaintiff alleges disability due to anxiety, depression, hypertension, type 2 diabetes mellitus, diabetic neuropathy, and arthralgias. In light of the issues raised by Plaintiff in her brief (*see* Doc. 12, at 3 & 6), the Court sets forth all references in the

---

judgment entered by a Magistrate Judge shall be taken directly to the United States Court of Appeals for this judicial circuit in the same manner as an appeal from any other judgment of this district court."))

decision to Drs. Paul Smith and John W. Davis, as well as the ALJ's critical residual functional capacity assessment.

**2.    The claimant has the following severe impairments: hypertension, diabetes, diabetic neuropathy with foot pain, obesity and anxiety disorders (20 CFR 416.920(c)).**

.    .    .

As to the diagnosis of depression, these are sporadic and associated with specific events and are not severe in that the depression does not last 12 continuous months. In terms of the claimant's depression, records from Springhill Medical Center include an emergency room visit on August 29, 2011, that identified emotional disturbance involving panic attack and chest pain that was related to claimant's sister having been diagnosed with cancer. The consultative report from John Davis, Ph.D., who examined the claimant on December 10, 2013, reference the claimant reported additional stress [with] the death of her mother and two sisters within the past two years, as well as her inability to work. The claimant denied any previous inpatient or outpatient mental health treatment; and reported current medications included metformin, Ativan, HCTZ, Tribenzor, Lortab, Lanitus, Phenergan, Clonidine, and Neurotin, prescribed by Dr. Smith with Franklin Clinic. The claimant reported that she had taken all of her medications the day of the evaluation, and acknowledged that while some medicines helped with anxiety, they did not relieve her depressive symptoms, nor relieve or regulate diabetes and blood pressure levels, or prevent numbness and burning in her feet. The examination yielded diagnostic impression of Major Depressive Disorder, NOS and Panic Disorder without Agoraphobia. The prognosis was guarded; however, Dr. Davis indicated it was reasonable to expect some improved mental health functioning with consistent treatment (e.g. psychotherapy and medication) within the next six to 12 months. Other comments indicate the claimant's ability to understand and remember complex instructions, carry out complex instructions, and make judgments on complex work-related decisions was moderately impaired at the time due to symptoms of anxiety and depression. Dr. Davis also commented that the claimant's ability to interact appropriately with the public, supervisors and co-workers, and to respond appropriately to usual work situations and changes in routine settings was moderately-to-markedly impaired due to symptoms of anxiety and depression. He concluded that the claimant appeared to have the ability to manage any benefits that were forthcoming.

The most reliable records regarding depression was the absence of a depression diagnosis from the claimant's treating physician, Dr. Smith. Dr.

Smith treats the claimant's anxiety and prescribes medication. He has not given a diagnosis for depression and I find that to be substantial evidence that depression is not severe in this case. ***Nevertheless, I still must consider even non-severe impairments***.

.      .      .

**3.     The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).**

.      .      .

The psychological consultative report provided by John Davis, Ph.D., on December 10, 2013, reference the history of anxiety-related disorders, and he included in the diagnoses, Major Depressive Disorder, NOS. The severity of the claimant's mental impairments, considered singly and in combination, does not meet or medically equal the criteria of listings 12.04 and 12.06. In making this finding, I have considered whether the "paragraph B" criteria are satisfied. To satisfy the "paragraph B" criteria, the mental impairments must result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. A marked limitation means more than moderate but less than extreme. Repeated episodes of decompensation, each of extended duration, means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks.

In activities of daily living, the claimant has mild restriction. This conclusion is consistent with the December 10, 2013 psychological consultative report of John Davis, Ph.D., which reference daily activities include rising at 6am, and spending the day reading, resting, and staying inside the house. Additionally, the report indicates the claimant performs some daily domestic chores, but gets help with these frequently. It is also generally consistent with the evidentiary record. The mild restriction in activities of daily living is also consistent with the rating of Joanna Koulianos, Ph.D., a State agency psychological consultant. Her assessment on December 11, 2013, also endorsed a mild limitation in this area.

In social functioning, the claimant has moderate difficulties. This conclusion is generally consistent with the bulk of the objective evidence, and in particular, with Dr. Davis'[s] consultative report that notes the claimant used to enjoy going places and socializing, but no longer engages in these activities. The claimant endorsed normal social

relationships with family, but stated that she has no friends and preferred keeping to herself. Additionally, the PRT rating from Dr. Koulianos is consistent with Dr. Davis's conclusion, in that they both reflect moderate level of difficulties in the area of social functioning.

With regard to concentration, persistence or pace, the claimant has mild difficulties. This conclusion is largely consistent with Dr. Davis'[s] consultative report that notes the claimant spends the day reading and watching television. The PRT rating from Dr. Koulianos is slightly different, in that she assigned a moderate rating in this area, whereas I concluded the claimant only has mild difficulties.

As for episodes of decompensation, the claimant has experienced no episodes of decompensation, which have been of extended duration. This conclusion is consistent with the consultative report from Dr. Davis, and with the PRT assessment by the State agency psychological consultant.

.     .     .

**4.     After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a), except in function-by-function terms, the claimant is limited to lifting and/or carrying no more than 10 pounds occasionally and 5 pounds frequently; standing and/or walking at least 2 hours in an 8-hour day; has no restrictions for sitting in an 8-hour workday; would need to alternate sitting/standing by sitting no more than one hour at one time with the ability to stand and stretch for 5 minutes at one time but would not need to leave the workstation. The claimant would have additional restrictions that include never operating foot controls, bilaterally; no climbing ladders or scaffolds; bending occasionally; no exposure to unprotected heights; no exposure to dangerous equipment; and could never operate a commercial vehicle. The claimant can attend and concentrate for two hours at one time before needing a break, and is able to adapt to occasional changes in work settings and routines. The work should not require interaction with [the] public on the job.**

.     .     .

On February 12, 2015, treating physician, Paul Smith, M.D., completed a Work Requirement form for the Food Stamp program, in which he opined that the medical conditions of uncontrollable blood pressure and neuropathy with foot pain, and damage from diabetes prevent the claimant from being able to work; and opined the condition(s) were permanent. He also gave the date of October 10, 2011 as onset for the described conditions.

.    .    .

About 6 weeks after I held a hearing, the claimant submitted 2 opinions from Dr. Smith. Dr. Smith, according to the medical evidence as a whole, has been treating the claimant for many years. In fact, Dr. Smith also supported claimant's application for food stamps at Exhibit 13F. It follows then that he would also want to support claimant's Supplemental Security Income application as well. Although the evidence was not timely, it arrived in the "nick of time" and I very carefully considered all of his opinions together and compared them to his treatment notes.

The claimant protectively filed this application on June 10, 2013. While outside of the relevant period, I reviewed 3F in its entirety as well as 8F and 12F. The evidence shows a long history of anxiety, diabetes mellitus, obesity and hypertension. In 2007, the claimant's weight was around 245-247 pounds. Her blood pressure was also high back then with various elevated ranges. In 2008, her blood pressure was still high even though she was taking Exforge 10/320. She was walking 2 miles per day. In 2009, her blood pressure was elevated because she had not taken her medication for 2 days. During this time[,] from 2007 to 2009, she also experienced cramps and abdominal pain, lower back pain and insomnia/snoring. In 2010, her primary complaints were low back pain and in early 2011, she once complained of her feet feeling numb. During 2011, the medical records indicate she was generally feeling better but her diagnosis was malignant hypertension. In late 2011, she began to complain of lower back pain again. Enter 2012 when Dr. Smith noted "malignant hypertension improved" and "diabetic neuropathy—no meds for now." However, Dr. Smith eventually prescribed Neurotin. The claimant was also in a motor vehicle accident in 2012 and complained of shoulder pain only once. During most of 2012, she complained of foot pain; her blood sugar was elevated as well.

Dr. Smith's records in 2013, right before the claimant filed the instant application, indicate the claimant had a stress test which was normal. Her blood sugars were much lower and overall she was about 20 pounds lighter. One week before she filed this application, Dr. Smith's notes indicate the claimant's diabetes was "ok," her hypertension was "ok" and she still had anxiety and low back pain. She had also gotten a nail in her foot. Over the next few visits, I noted Dr. Smith confirmed the claimant's anxiety, neuropathy and hypertension were improved. I also noted the claimant was living in Birmingham, exercising, eating well and lost 10 more pounds—she was down to 214 pounds.

Exhibit 8F shows that in 2014, the claimant['s] anxiety and diabetes was "ok" and malignant hypertension was "improved" . . . . I also noted during

this time, at least up to September 2014, there were no complaints of her feet for over a year. In September 2014, the claimant complained of foot pain. In January 2015, the claimant presented to Dr. Smith with a "foreign object" in her foot for 2 weeks and it was infected. Despite no complaints for well over a year about her feet, and considering the recent foreign object in her foot with infection, I still considered the neuropathy in her feet with foot pain and found it severe in Step 2 above.

I understand that Dr. Smith has been treating the claimant a long time and wants to assist her in obtaining food stamps and that is the reason for his opinion in 13F. However, it naturally follows that Dr. Smith's motivation in submitting opinions now to support her Supplemental Security Income application are also in order to assist her with benefits. Nevertheless, Dr. Smith's treatment records simply do not support the extreme opinions. For example, in 14F, Dr. Smith specifically endorses that the claimant has "no blackouts" but does have dizziness and numbness in her extremities. The records do show her complaints of numbness in the feet, but they are sporadic. There was a time when the complaints were more prolific, but not recently. There was one time the claimant reported having dizziness but that was all the way back to 2011 and no complaints of that symptom since then.

Dr. Smith also checks the "yes" box when the pre-made form asks if the claimant will miss 2 days per month. Yet, Dr. Smith's treatment notes do not state anything about work activity, do not give any restriction and fail to indicate if he ever knew or asked her about work. Without any cogent medical rationale or explanation to explain this limitation or opinion, it is unreasonable to accept this conclusion. There is no evidence that Dr. Smith is trained in vocational matters and he failed to provide a function-by-function assessment of the limitations he implied renders the claimant disabled.

***I give little weight to Dr. Davis'[s] opinion regarding social interaction and adaptation skills because, based upon one examination, he diagnosed the claimant with depression and panic disorder even though Dr. Smith never diagnosed the claimant with depression and he had been treating her for years. Dr. Smith has diagnosed the claimant with "anxiety" and he provides medication for anxiety, so that diagnosis is more reliable***.

After considering the State agency medical consultant's psychological assessments at Exhibit 2A of the evidentiary record, I give the opinions some weight, because they are generally consistent with the residual functional capacity. In a PRT assessment on December 11, 2013, Dr. Joanna Koulianos, opined the claimant's affective and anxiety disorders resulted in mild [limitations in] activities of daily living; moderate difficulties

in social functioning; moderate difficulties in concentration, persistence or pace; and there were no repeated episodes of decompensation. Noteworthy, the undersigned determined that the claimant had no more than "mild" difficulties in the area of concentration. In the Mental RFC assessment, Dr. Koulianos explained that adaptive limitations indicated changes in the work routine should be infrequent.

(Tr. 21, 21-22, 22, 23, 24, 26 & 27-28 (internal citations omitted; some emphasis added)).

## II. Standard of Review and Claims on Appeal

In all Social Security cases, an ALJ utilizes a five-step sequential evaluation

to determine whether the claimant is disabled, which considers: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if so, whether the severe impairment meets or equals an impairment in the Listing of Impairments in the regulations; (4) if not, whether the claimant has the RFC to perform her past relevant work; and (5) if not, whether, in light of the claimant's RFC, age, education and work experience, there are other jobs the claimant can perform.

*Watkins v. Commissioner of Soc. Sec.*, 457 Fed. Appx. 868, 870 (11th Cir. Feb. 9, 2012)[2] (per curiam) (citing 20 C.F.R. §§ 404.1520(a)(4), (c)-(f), 416.920(a)(4), (c)-(f); *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004)) (footnote omitted). The claimant bears the burden, at the fourth step, of proving that she is unable to perform her previous work. *Jones v. Bowen*, 810 F.2d 1001 (11th Cir. 1986). In evaluating whether the claimant has met this burden, the examiner must consider the following four factors:  (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education and work history. *Id.* at 1005. Although "a claimant bears the burden of demonstrating an inability to return

---

[2]       "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir.R. 36-2.

to h[er]  past relevant work, the [Commissioner of Social Security] has an obligation to develop a full and fair record." *Schnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987) (citations omitted). If a plaintiff proves that she cannot do her past relevant work, as here, it then becomes the Commissioner's burden—at the fifth step—to prove that the plaintiff is capable—given her age, education, and work history—of engaging in another kind of substantial gainful employment that exists in the national economy. *Phillips, supra,* 357 F.3d at 1237; *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999), *cert. denied,* 529 U.S. 1089, 120 S.Ct. 1723, 146 L.Ed.2d 644 (2000); *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985).

The task for the Magistrate Judge is to determine whether the Commissioner's decision to deny claimant benefits, on the basis that she can perform those sedentary, unskilled jobs identified by the vocational expert at the administrative hearing, is supported by substantial evidence. Substantial evidence is defined as more than a scintilla and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). "In determining whether substantial evidence exists, we must view the record as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).[3] Courts are precluded, however, from "deciding the facts anew or re-weighing the evidence." *Davison v. Astrue*, 370 Fed. Appx. 995, 996 (11th Cir. Apr. 1,

---

[3]    This Court's review of the Commissioner's application of legal principles, however, is plenary. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

2010) (per curiam) (citing *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005)). And, "'[e]ven if the evidence preponderates against the Commissioner's findings, [a court] must affirm if the decision reached is supported by substantial evidence.'" *Id.* (quoting *Crawford v. Commissioner of Social Security*, 363 F.3d 1155, 1158-1159 (11th Cir. 2004)).

On appeal to this Court, Blackston asserts two reasons the Commissioner's decision to deny her benefits is in error (*i.e.,* not supported by substantial evidence): (1) the ALJ reversibly erred in failing to assign controlling weight to the opinions of Dr. Paul Smith, her treating physician; and (2) the ALJ reversibly erred in failing to accord adequate weight to the consulting physician, Dr. John W. Davis. Because the undersigned finds that the ALJ erred to reversal with respect to Plaintiff's second assignment of error, the Court has no reason to address Blackston's first assignment of error. *See Pendley v. Heckler,* 767 F.2d 1561, 1563 (11th Cir. 1985) ("Because the 'misuse of the expert's testimony alone warrants reversal,' we do not consider the appellant's other claims.").

"Weighing the opinions and findings of treating, examining, and non-examining physicians is an integral part of the process for determining disability." *Kahle v. Commissioner of Social Security,* 845 F.Supp.2d 1262, 1271 (M.D. Fla. 2012). In general, "the opinions of examining physicians are given more weight than those of non-examining physicians, treating physicians are given more weight than those of physicians who examine but do not treat, and the opinions of specialists are given more weight on issues within the area of expertise than those of non-specialists." *McNamee v. Social Security Administration,* 164 Fed.Appx. 919, 923 (11th Cir. Jan. 31, 2006). In

assessing the medical evidence, "[t]he ALJ must state with particularity the weight given to different medical opinions and the reasons therefor[,]" *Romeo v. Commissioner of Social Security,* 2017 WL 1430964, *1 (11th Cir. Apr. 24, 2017) (citing *Winschel v. Commissioner of Social Security,* 631 F.3d 1176, 1179 (11th Cir. 2011)), and the ALJ's stated reasons must be legitimate and supported by the record, *see Tavarez v. Commissioner of Social Security,* 638 Fed.Appx. 841, 847 (11th Cir. Jan. 7, 2016) (finding that the "ALJ did not express a legitimate reason supported by the record for giving [the consulting physician's] assessment little weight.").

This Court finds that the ALJ in this case did not express a legitimate reason for giving that portion of the consulting physician's opinion the ALJ aptly refers to as "social interaction and adaptation skills" (*see* Tr. 28) little weight. *See Tavarez, supra.* The ALJ gave but one reason for giving this portion (and this portion alone) of Davis's opinion little weight, namely, that based on one examination, Davis diagnosed Plaintiff with depression[4] and panic disorder even though Dr. Smith, who had been treating Plaintiff for years, had only ever diagnosed her with anxiety (the more reliable diagnosis, according to the ALJ). (Tr. 28.) Although this Court questions whether this (essentially, Dr. Smith's anxiety diagnosis) even qualifies as a reason for according little weight to Davis's "social interaction and adaptation skills" opinion (*see* Tr. 509-10 ("The claimant's ability to interact appropriately with the public, supervisors and co-workers, and to respond appropriately to usual work situations and changes in routine settings is

---

[4]     The ALJ's suggestion that the diagnoses of depression in the record are sporadic (*see* Tr. 21) is a bit misleading given that there is consistent evidence of record of depression beginning on May 26, 2013 (Tr. 484-85) and extending through January of 2015 (*see, e.g.,* Tr. 507-10, 597-98, 633, 638, 650, 653, 662 & 790).

moderately-to-markedly impaired due to symptoms of anxiety and depression.")),[5] it certainly cannot be found to be a legitimate reason, both because Davis's opinion in this regard was (as he states) based on Plaintiff's symptoms of depression and anxiety and because Dr. Smith's anxiety diagnosis is not an opinion regarding Plaintiff's functional/mental limitations, *see Moore v. Barnhart,* 405 F.3d 1208, 1213 n.6 (11th Cir. 2005) ("[T]he mere existence of [] impairments does not reveal the extent to which they limit [a claimant's] ability to work  . . . ."). More to the first point, nothing about Davis's "social interaction and adaptation skills" opinion would indicate that it was "tied to" or premised on Plaintiff's impairments of anxiety and depression being found (by the ALJ) to be severe; rather, it was premised on Blackston's symptoms of anxiety and depression that Davis personally observed.[6] And as for the second point, Dr. Davis was

_____

[5]    The non-examining psychologist, Dr. Joanna Koulianos, to whom the ALJ cited in the decision (*see, e.g.,* Tr. 23) and accorded "some" weight (Tr. 28), determined in her mental residual functional analysis—as part of a report which took into consideration only Plaintiff's anxiety disorders, as affective disorders (*see* Tr. 82-87)—that Blackston would be moderately limited in her ability to accept instructions and respond appropriately to criticism from supervisors, as well as in her ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes (Tr. 86 & 87). Curiously, however, these limitations (which were not rejected by the ALJ—*see* Tr. 28) were not accounted for in the ALJ's assessment of residual functional capacity or in the hypothetical question posed to the vocational expert (*compare* Tr. 24 *with* Tr. 66-67). *See* 20 C.F.R. § 416.945(c) ("A limited ability to carry out certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, coworkers, and work pressures in a work setting, may reduce your ability to do past work and other work.").

In light of the foregoing, this Court could only legitimately "infer" from the record that "disregarding" Davis's diagnosis of depression and his "social interaction and adaptation skills" opinion—which was, at best, only partially based on Plaintiff's depressive symptoms—would still require the ALJ to account for Blackston's clearly-established (by Koulianos and Dr. Davis as well) moderate limitations in her abilities to respond appropriately to supervision and coworkers in the assessment of residual functional capacity and in the hypothetical posed to the VE. Since the ALJ failed to take these limitations into account, this Court is simply unable to find that the decision denying benefits is supported by substantial evidence.

[6]    Certainly, the ALJ's decision cannot be read to suggest that Dr. Davis could not have observed (and did not observe) Plaintiff's display of depressive symptoms on December (Continued)

the only examining physician who offered an opinion regarding Blackston's mental limitations and, no doubt as a result, the ALJ relied on Davis's evaluation and opinions during the course of her decision when it so behooved her (*see, e.g.,* Tr. 22 & 23). The ALJ's failure to set forth a legitimate/adequate reason supported by the evidence for giving Davis's "social interaction and adaptation skills" opinion little weight, however, requires that this action be remanded for further proceedings regarding Blackston's eligibility for supplemental security income benefits. *Compare Tavarez, supra,* 638 Fed.Appx. at 847 & 849 *with Davis v. Commissioner of Social Security,* 449 Fed.Appx. 828, 833 (11th Cir. Dec. 19, 2011) ("We will not affirm an ALJ's decision without adequate explanation because, without such an explanation, 'it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence.'"); *Kahle, supra,* 845 F.Supp.2d at 1272 ("[R]eversal is required where an ALJ fails to sufficiently articulate the reasons supporting his decision to reject portions of a medical opinion while accepting others.").

---

10, 2013 (*see* Tr. 505). Moreover, as alluded to earlier, even if the ALJ could properly discount Dr. Davis's opinion because of the inclusion of "depressive" symptoms, that opinion could not be wholly rejected because it was also based, at least in part, on Plaintiff's anxiety symptoms. And given the undisputed evidence of record from Dr. Koulianos that Plaintiff would have moderate limitations in responding appropriately to supervision and coworkers (*see* Tr. 86 & 87), it is certainly logical to read Dr. Davis's opinion as indicating a moderate limitation in social interaction and adaptation skills related solely to Plaintiff's anxiety. Accordingly, whichever way the cake is sliced, it is clear to this Court that the ALJ reversibly erred in failing to take into consideration Plaintiff's limitations in social interaction and adaptation skills (which are clearly established in the record evidence) in her RFC assessment and in the hypothetical posed to the VE, such that the fifth-step denial of benefits cannot be found to be supported by substantial evidence.

## CONCLUSION

In light of the foregoing, it is **ORDERED** that the decision of the Commissioner of Social Security denying plaintiff benefits be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g),[7] *see Melkonyan v. Sullivan*, 501 U.S. 89, 111 S.Ct. 2157, 115 L.Ed.2d 78 (1991), for further proceedings not inconsistent with this decision. The remand pursuant to sentence four of § 405(g) makes the plaintiff a prevailing party for purposes of the Equal Access to Justice Act, 28 U.S.C. § 2412, *Shalala v. Schaefer*, 509 U.S. 292, 113 S.Ct. 2625, 125 L.Ed.2d 239 (1993), and terminates this Court's jurisdiction over this matter.

**DONE** and **ORDERED** this the 6th day of June, 2017.

s/P. BRADLEY MURRAY
**UNITED STATES MAGISTRATE JUDGE**

---

[7] Although the plaintiff's application in this case is solely for supplemental security income benefits pursuant to 42 U.S.C. § 1383(c)(3), remand is appropriate under sentence four of § 405(g) because § 1383(c)(3) provides that "[t]he final determination of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title."